■ ALICIA M. CARROLL, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 71984.)—In a claim to recover damages for personal injuries arising from an automobile accident, the State of New York appeals from a judgment of the Court of Claims (McCabe, J.), dated October 3, 1988, which, after a nonjury trial, is in favor of the claimant and against it in the principal sum of $210,375, upon a finding that the State was 85% at fault in the happening of the accident.

Ordered that the judgment is affirmed, with costs.

The claimant, a student at Syracuse University, was traveling eastbound on Route 6, on her way to visit her parents at their Brooklyn home on September 6, 1985, when she was involved in an accident at the Queensboro Traffic Circle in the Town of Highlands, Orange County. The accident occurred at approximately 10:00 P.M., after the claimant had driven for four hours. As the claimant approached the traffic circle in

the dark, she noticed some patchy fog, although she could not recall for certain if it was on Route 6. There was no precipitation, and she stated that there were no lights on the roadway. She recalled that there was a double yellow line down the center of Route 6 until the end of the incline which led into the Queensboro Circle. She had never traveled this route before and the only sign she remembered seeing was a lettered one which warned of a traffic circle ahead, though there were other signs along Route 6 such as a "traffic circle ahead" sign, a diagramatic traffic circle sign, a "yield ahead" sign, an "all traffic" sign, and another "yield" sign. As she traveled at a speed of about 30 to 40 miles per hour and while still a short distance from the traffic circle, a car heading westbound with its high beam lights on temporarily blinded her, forcing her to follow for guidance the painted yellow line which curved to the left. As a result, the claimant entered the traffic circle in the wrong direction and saw other cars coming towards her. Realizing her error, she made a last-second effort to avoid colliding with them, swinging her car to the right and hitting a tree.

The State owes the traveling public the nondelegable duty of keeping its highways in a reasonably safe condition *(see, Friedman v State of New York,* 67 NY2d 271, 283). Although "[i]n the field of traffic design engineering, the State is accorded a qualified immunity from liability arising out of a highway planning decision" *(Friedman v State of New York, supra,* at 283; *Alexander v Eldred,* 63 NY2d 460, 465-466), once the State is made aware of a dangerous highway condition it must undertake a reasonable study of it with a view toward an expeditious alleviation of the danger *(see, Friedman v State of New York, supra,* at 287). The record indicates that prior to the instant accident there were numerous complaints that the Queensboro Circle presented an extremely hazardous situation. This condition existed because of insufficient lighting, an absence of speed warning signs, and lack of warnings that motorists must change direction. A New York State Department of Transportation work order, dated February 12, 1985, was issued for Route 6 on the approach to the traffic circle. Unfortunately, however, the corrective measures ordered were not completed until April 11, 1986, some seven months after the claimant's accident and some 14 months after the order was issued. The State presented no valid excuse for the delay, despite its awareness of the potentially grave situation presented by the Queensboro Circle. Thus, we may infer that the State's delay in taking corrective measures was unreasonable.

Nevertheless, the State argues that the Court of Claims erred in apportioning a mere 15% comparative fault to the claimant. It cites *Miller v Hine* (281 App Div 387, 389-390) for the proposition that if the driver of an automobile is blinded by the headlights of an opposing car to the extent that he or she cannot see the road for a reasonably safe distance ahead, ordinary prudence and care require the driver to stop until the opposing car has passed. However, this proposition cannot be applied to this case. The very purpose of a circular interchange is to maintain a smooth flow of traffic. It would be unreasonable to expect a temporarily blinded driver, entering a traffic circle in the wrong direction and confronted by oncoming traffic, to stop instead of trying to avoid a collision.

The State also argues that the claimant's apportionment of fault should be increased due to her failure to see the signs other than the one indicating a "traffic circle ahead" posted along Route 6 east. This argument ignores the fact that the State did not provide signs warning of how far ahead the circle was or at what speed one was to approach it. The claimant was already traveling below the 50-miles-per-hour speed limit at 30 to 40 miles per hour. She was never told to proceed more slowly. Thus, she cannot be faulted for failing to reduce her speed still further.

For all of the reasons stated above, the Court of Claims was correct in finding the State 85% at fault for the claimant's injuries. Mollen, P. J., Bracken, Brown and Rosenblatt, JJ., concur.